## HALL *v.* INGALLS EMPLOYEES CREDIT UNION.

In Banc. April 11, 1949.

(39 So. (2d) 774)

**Heidelberg & Watts**, for appellant.

110

112

**O. K. Wiesenburg,** for appellees.

114

**Alexander, J.**

Appellee is a credit union organized and operating under Chapter 5, vol. 4, Miss. Code 1942, Sections 5391 to 5428 inclusive. Appellant, while an Ingalls employee, became a member and made savings deposits therein which, together with earnings, had amounted to

$2,038.88. Appellant later left the employment of Ingalls and moved to another state. Thereupon the Union sent him its check for his deposit which was returned by the payee on the ground that he was still a member and desired his deposit to remain. A second remittance was made and the check therefor held by the payee.

Hall bought bill for injunction against expulsion and to compel retention of the deposit and recognition of his membership. The bill exhibited the charter and the by-laws of the Union. From a decree sustaining a demurrer and dismissing the bill as amended, Hall appeals.

The Union seeks to justify its resistance to the prayer of the bill by an alleged amendment to its original by-laws, which amendment was sought to be passed at a meeting held Tuesday, January 11, 1944, and is as follows: "Membership in this Credit Union is limited to those who are actually employees of the Ingalls Shipbuilding Corporation and who maintain their relationship as employees of said company". Similar action was taken on January 13, 1947, and it was then provided that "A member who leaves the employment of the Ingalls Shipbuilding Corporation shall thereupon automatically terminate his membership in the Ingalls Employees Credit Union", under which circumstances his credit balance would be paid to him. The original by-laws provided for expulsion by a two-thirds vote of those present "but only for cause". No sufficient cause is shown apart from the provision for automatic termination of membership.

Let us trace the authority for the Union's action back to the orginal by-laws. These provided as follows:

"Section 5. A member who leaves the sphere of operation of the Credit Union may, except as provided in Section 4, of this article, leave in the credit union his shares and deposits (Subject to the rules and regulations governing shares and deposits as contained herein) or he may withdraw from the credit union in which event he shall receive his shares and deposits together with such fair earnings thereon as the Directors may determine. In no

event shall he be permitted to thereafter borrow from the credit union."

It is further provided that: "The fiscal year of the credit union shall end at the close of business on the thirty-first day of December. The annual meeting of the members shall be held at Pascagoula, Mississippi on the second Monday of January in each Year."

It is further stated in Section 4 thereof: "A majority shall constitute a quorum. If a quorum is not present at the date of the first appointed for a regular or special meeting of the credit union, the meeting shall be adjourned for ten days and a second notice mailed to all members, containing the date of the adjourned meeting. Those then present shall constitute a quorum for the transaction of business."

Amendments to the by-laws are provided for in Article XVII, Section 1, which is as follows: "These by-laws may be amended by a three-fourth vote of the member or members present (which number must constitute a quorum) at any meeting, . . . ."

It is seen therefore that the annual meeting must be held on the second Monday of January. This was not done. The action then taken was therefore void, and especially so since it is alleged that only twenty-five members were then present, whereas the by-laws required a majority of the membership which is asserted to number over three thousand. Although Article XII, Section 4, provides that in default of such quorum the meeting may be adjourned ten days and after due notice thereof "those then present shall constitute a quorum", no such meeting was held.

There is no occasion therefore to consult the minutes of succeeding meetings seeking to reduce the number requisite to a quorum and to provide for automatic suspensions, since authority therefor must be deraigned from a lawful meeting. The original by-laws had not been properly amended so as to diminish the requirements as to a workable quorum. At none of the succeeding

meetings were there present more than thirty-six members.

The Union was hence bound to act only under authority of its original by-laws until amended at a proper meeting and no amendment could be made except pursuant to the authority of Articile XII, Section 4, and Article XVII, Section 1.

We are of the opinion that the bill stated grounds for equitable relief and that no full and adequate remedy at law was available to the ends sought. It is true that if upon remand complainant shall prevail he may exult in only a Pyrrhic victory since the defendant can, conformable to its by-laws, properly amend them. We are, however, engrossed only in the circumstance that, so far as the bill shows, such amendment has not been made.

Reversed and remanded.